UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

GAS DRILLING AWARENESS :
COALITION, :
       Plaintiff :
 : CIVIL NO. 1:10-CV-1997
   vs. :
 :
 :
JAMES F. POWERS, INSTITUTE OF :
TERRORISM RESEARCH AND :
RESPONSE FOUNDATION, :
INSTITUTE OF TERRORISM :
RESEARCH AND RESPONSE, A :
NON-PROFIT CORPORATION, AND
MICHAEL PERELMAN
       Defendants


*M E M O R A N D U M*

*I.*     *Introduction*

      We are considering a motion to dismiss filed by defendant, James Powers, Jr., former Director of the Pennsylvania Emergency Management Agency's Office of Homeland Security ("Powers"), and a motion to dismiss filed by defendants Institute of Terrorism Research and Response Foundation, Institute of Terrorism Research and Response, and Michael Perelman (collectively "ITRR defendants").  This matter relates to a contract between Powers and ITRR whereby ITRR agreed to maintain surveillance and report potential terrorist threats against Pennsylvania's critical infrastructure.  ITRR began surveilling plaintiff, Gas Drilling Awareness Coalition ("GDAC"), and reporting its activities through Pennsylvania Intelligence Bulletins ("PIB").  Plaintiff filed the instant

action alleging violations of its right of freedom of speech and association under the First Amendment, retaliation for exercise of First Amendment rights, violation of the Due Process Clause of the Fourteenth Amendment, and violation of Article I, Section 20 of the Pennsylvania Constitution.

*II.        Background*

In a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we must take all factual allegations in the complaint as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). The plaintiff sets out the following facts in its complaint. The case arises from a surveillance program created by a contract between defendant Powers and defendant ITRR to protect against threats to critical infrastructure. As part of the contract, ITRR identified threats and reported them as noted. ITRR recognized GDAC as a potential threat and began surveillance of the organization.

GDAC is an unincorporated organization that advocates regulation of natural gas drilling of Pennsylvania's Marcellus Shale. The group uses a grass-roots campaign to educate the public on the health and environmental impact of unregulated drilling. At all times, plaintiff's conduct and speech was lawful and peaceful. Plaintiff alleges that its activities caused it to be targeted by ITRR as a potential threat to critical infrastructure. As a result, ITRR surveilled plaintiff and compiled the information in tri-weekly PIB bulletins. These bulletins were then provided to law enforcement agencies, and to "private third party individuals and entities." (doc. 1, ¶ 74.)

As relief, plaintiff asks for declaratory judgment that defendants' conduct violated the U.S. Constitution and Pennsylvania Constitution. Plaintiff also seeks to permanently enjoin defendants from conducting surveillance against individuals and groups engaged only in peaceful First Amendment conduct, prevent defendants from reporting such conduct, and order defendants to delete and destroy all information gathered against plaintiff. Finally, plaintiff seeks nominal damages in the amount of $125,000 and reasonable attorney's fees, costs, and expenses.

III.   Discussion

*A. Standard of Review*

Federal Rule of Civil Procedure 12(b)(1) allows a court to dismiss a complaint for lack of subject-matter jurisdiction. When a motion to dismiss pursuant to Rule 12(b)(1) is presented, the plaintiff is required to "convince the court it has jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). Plaintiffs "bear the burden of establishing their standing." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  A complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d. 929 (2007).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955 at 1974.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, - - - U.S. - - - -, 129 S.Ct. 1937, 1949 (2009)(quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.)   "[L]abels and conclusions" are not enough, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*, 127 S.Ct. at 1965 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." *Fowler*, *supra*, 578 F.3d at 210.   First, we separate the factual elements from the legal elements and disregard the legal conclusions.  *Id.* at 210-11.  Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  *Id.* at  211 (quoted case omitted).

*B. Standing*

Article III of the Constitution requires federal courts to adjudicate only "cases" and "controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003).  In order to have standing, a plaintiff must

4

prove (1) injury in fact, (2) a causal connection between the injury and the challenged action, and (3) a likelihood that the injury is redressible by a favorable judicial decision. *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 258 (3d Cir. 2009).

The first two requirements for standing are met, because there is an injury in fact and a causal connection. The Supreme Court has held that the surveillance of peaceful activity by law enforcement officials, without more, is not enough to present a justiciable controversy for the courts to decide because no direct injury results from such activity. *See Laird v. Tatum*, 408 U.S. 1, 13 (1972). The sharing of such information with individuals not involved in law enforcement or government agencies, however, does create a harm. *See Philadelphia Yearly Meeting of the Religious Society of Friends v. Tate*, 519 F.2d 1335, 1338 (3d Cir. 1975) (stating that sharing of surveillance information with non-police groups "at minimum, show immediately threatened injury to plaintiffs by way of a chilling of their rights of freedom of speech and associational privacy."). In determining whether an injury occurred, the Third Circuit focused on the legitimate law enforcement function when it noted "[i]t is not apparent how making information concerning the lawful activities of plaintiffs available to non-police groups or individuals could be considered within the proper ambit of law enforcement activity." *Id.* These cases make clear that government surveillance alone does not amount to an injury, but dispersal of the information to non-police groups may create an injury.

The surveillance of plaintiff's activities and reporting of such activity to those not involved in law enforcement, as described in plaintiff's complaint, amounts to

an injury. There is a causal connection between the injury and the challenged action. Powers made an agreement with ITRR to conduct the surveillance.  ITRR performed the surveillance and reported plaintiff's activities to Powers.  The compiled information was sent to law enforcement, gas drilling stakeholders, and an individual member of the public.  This demonstrates a causal connection.

The final requirement for standing is also met, because it is likely that plaintiff's injury is redressible by a favorable court decision.  In its claim for relief, plaintiff requests a declaratory judgment, injunctive relief, nominal damages, and attorney's fees. Part of the injunctive relief requested is having defendant Powers delete all information gathered about plaintiff.  This, along with nominal damages and attorney's fees, are sufficient to redress plaintiff's injury.  Plaintiff has met all of the standing requirements to bring this case.

*C. Injunctive Relief*

Defendants argue that the injunctive relief requested by plaintiff is moot and overreaches.  Plaintiff has requested to permanently enjoin defendants from conducting surveillance of individuals and groups engaged only in peaceful activity, reporting on the conduct of such individuals, and ordering defendants to delete and destroy any information gathered about plaintiff.  Plaintiff's first two requests are moot and overreaching.

Third Circuit precedent makes clear that "An injunction is appropriate only where there exists a threat of irreparable harm such that legal remedies are rendered

inadequate." *Anderson v. Davila*, 125 F.3d 148, 163 (1997).  If a plaintiff seeks an injunction to terminate surveillance by the government that has already been terminated, "an injunction is unnecessary and unsupportable." *Id.* at 164.  In a case dealing with government surveillance, an injunction may be appropriate if the surveillance is ongoing or if "there is a credible threat that it will recur in the future." *Id.* at 164.

In its complaint, plaintiff notes that "Gov. Rendell alleges that he immediately cancelled the surveillance and reporting contract between the Commonwealth and Defendants ITRR Foundation and/or ITRR and Perelman." (doc. 1, ¶ 69).  Plaintiff's complaint does not allege any facts that would indicate a threat that the surveillance will recur in the future.  In its brief, plaintiff includes additional facts that may indicate possible recurrence.  Plaintiff's complaint, however, "may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. Ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).  Since the contract between Powers and ITRR was canceled, there is no threat of future surveillance by these defendants.  Plaintiff's request for injunctive relief to prevent defendants from conducting surveillance and reporting on that surveillance is moot and will be dismissed.

Plaintiff's request to have defendants delete and destroy any information gathered against plaintiff is not moot or overreaching.  Plaintiff alleges that the surveillance bulletins are still available on the website of the Commonwealth, meaning the request to have them removed is not moot.  The claim does not overreach, because

it requests that only information concerning plaintiff be removed from a website within the control of defendants. This request for injunctive relief will not be dismissed.

### *D. Nominal Damages*

ITRR defendants argue that plaintiff's request for nominal damages in the amount of $125,000 must be struck, because nominal damages may only be given in the amount of one dollar. Other courts have determined that nominal damages amount to one dollar. *See Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 197 A.2d 721, 728 (1964); *Mayberry v. Robinson*, 427 F. Supp. 297, 314 (M.D. Pa. 1997). Plaintiff's request for nominal damages must be struck.

### *E. Violation of Freedom of Speech and Association under the First Amendment*

The facts alleged in plaintiff's complaint are sufficient to make a claim for violation of freedom of speech and association under the First Amendment. Supreme Court and Third Circuit precedent make clear that the gathering of information regarding individuals' peaceful activity is not justiciable if shared only among law enforcement agencies. *Laird v. Tatum*, 408 U.S. 1, 13 (1972). The sharing of such information with others, however, "at a minimum, show[s] immediately threatened injury to plaintiffs by way of a chilling of their rights of freedom of speech and associational privacy." *Philadelphia Yearly Meeting of the Religious Society of Friends v. Tate*, 519 F.2d 1335, 1338 (3d Cir. 1975). The dispersal of such information may dissuade some individuals from becoming members of plaintiff, or may cause some to resign membership. *Id.*

Plaintiff contends that defendants maintained surveillance on its actions and compiled the information obtained in bulletins which were distributed to "private third party individuals and entities." (doc. 1, ¶ 74.) The distribution of such information to private third party individuals and entities amounts to an injury and states a claim upon which relief may be granted. Defendant Powers argues that the information was given only to law enforcement officials and was unintentionally sent to a single individual who published it to the world. However, in a motion to dismiss, we must consider the facts in the complaint as true and examine them in the light most favorable to the non-moving party. Plaintiff's allegations are sufficient to make out a claim for relief and defendant's motion to dismiss this claim must be denied.

*F. Retaliation for Exercise of First Amendment Rights*

The facts alleged in the plaintiff's complaint, if true, are sufficient to make out a retaliation claim for the exercise of First Amendment rights. For a retaliation claim, a party must demonstrate that (1) it engaged in a protected activity, (2) the government responded with retaliation, and (3) the protected activity was the cause of the government's retaliation. *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997). "[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech." *Id.* When the speech precedes government action, the motives of the government are relevant. *Id.*

Plaintiff participated in protected First Amendment activities, including speech and association. It aimed to educate the public about the dangers of unregulated gas drilling. Plaintiff asserts that, in response to these activities, ITRR, pursuant to its contract with Powers, began surveillance of its activities, reporting them to non-law enforcement companies and individuals. This is enough to make a claim for retaliation.

*G. Violation of the Due Process Clause of the Fourteenth Amendment*

In its complaint, plaintiff claims a violation of the Due Process Clause of the Fourteenth Amendment. The complaint details the classification of plaintiff by defendants as a potential security threat.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citation omitted). Defamation may be brought as a state law claim, but, without more, is not a constitutional violation. *Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1078 (3d Cir. 1997). The Third Circuit has stated that "There is no federal constitutional right to reputation. . . and violations of state law, including defamation, are insufficient to state a claim under § 1983." *Kulwicki v. Dawson*, 969 F.2d 1454, 1468 (3d Cir. 1992). In order to bring a claim under the Due Process Clause of the Fourteenth

Amendment for deprivation of a liberty interest in reputation, a plaintiff "must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill*, at 236.

Plaintiff bases its due process claim on the Supreme Court's fractured opinion in *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 71 S. Ct. 624 (1950). There, Justices Black, Frankfurter, Jackson, and Douglas wrote concurrences finding that the Attorney General's classification of three charitable organizations as communist groups, distribution of this classification to all government agencies and departments, and the use of this information in determining the loyalty of government employees, without affording an opportunity to challenge the classification, violated due process.[1] *Id.* at 143, 173, 175, 185, 201, 210-11. The opinion notes that such conduct violates an organization's common law right to be free from defamation, but it does not address whether this conduct violates due process. *Id.* at 139.

The facts in *McGrath* differ from those in the present case. There, the classification of groups as communist was then used to determine the loyalty of government employees who participated in those groups. In the present case, the classification of the plaintiff as a potential threat to critical infrastructure did not result in the loss of employment for individual members of the group. In *Paul v. Davis*, 424 U.S.

---

[1]These Justices found that such actions would violate the Due Process Clause of the Fifth Amendment. *McGrath* at 143, 161. Although Plaintiff brought a claim under the Due Process Clause of the Fourteenth Amendment, *McGrath* is relevant in our analysis. *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, n. 3 (1976).

693, 96 S. Ct. 1155 (1976), the Supreme Court interpreted *McGrath* and other, similar cases, stating that

> The Court has recognized the serious damage that could be inflicted by branding a government employee as 'disloyal,' and thereby stigmatizing his good name. But the Court has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment.

*Id.* at 705. The Court, considering *McGrath*, required a harm in addition to defamation.

Plaintiff argues that classifying its speech as a potential threat and reporting this information without an opportunity to be heard violates due process. Plaintiff's right to due process was not violated because it was not deprived of an individual interest protected by the Fourteenth Amendment. Though plaintiff claims that the classification is defamatory, this claim, without more, does not amount to a constitutional violation. Plaintiff's due process claim must be dismissed.

### *H. Violation of Article 1, Section 20 of the Pennsylvania Constitution*

Plaintiff asserts a claim under Article I, Section 20 of the Pennsylvania Constitution, which states "The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance." Pa. Const. Art. I, § 20. Though the issue has not been decided by Pennsylvania courts, federal courts have determined that there is no private right of action for monetary damages under this section. *Sabatini v. Reinstein*, 1999 WL

636667, *3 (E.D. Pa. 1999). Plaintiff's request for nominal damages under this claim must be dismissed.

Defendant Powers is protected from suits seeking injunctive and declaratory relief under the Pennsylvania Constitution by the Eleventh Amendment of the U.S. Constitution. The Eleventh Amendment precludes litigation against states and their agencies in federal court. *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). This bar is subject to two exceptions: (1) Congress may waive a state's sovereign immunity under the Fourteenth Amendment, or (2) citizens may sue states and their agencies in federal court if they are seeking only an injunction for a continuing violation of federal law. *See id.* (citing *Ex Parte Young*, 209 U.S. 123 (1909)). In Count IV, plaintiff seeks relief under the Pennsylvania Constitution. A state may also waive sovereign immunity, but Pennsylvania has not done so. 42 Pa.C.S. § 8521. Count IV of plaintiff's complaint must be dismissed. We will deny leave to amend this claim as futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (noting a court may dismiss a claim with prejudice when leave to amend would be futile).

*I. Qualified Immunity*

Qualified immunity "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). For a right to be clearly established, its "contours must be sufficiently clear that a reasonable official would

13

understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The unlawfulness must be "apparent." *Id.* Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, at 2085 (citation omitted).

According to the facts set forth in the complaint, Powers made a contract with ITRR to conduct surveillance on potential threats to critical infrastructure and compile the information into reports. These reports were distributed to "private third party individuals and entities." (doc. 1, ¶ 74.) The distribution of information gathered through surveillance to those outside of law enforcement is a violation of a constitutional right. *Philadelphia Yearly Meeting of the Religious Society of Friends v. Tate*, 519 F.2d 1335, 1338 (3d Cir. 1975). The plaintiff has pled facts demonstrating that the first step of the qualified immunity analysis is met.

Next, we look to whether the right was clearly established. Third Circuit precedent makes clear that the dispersal of information gathered through government surveillance to those outside law enforcement chills First Amendment rights. *Id.* Powers asserts that his actions were pursuant to the Homeland Security Act of 2002 and the Homeland Security Presidential Directive-7 of December 17, 2003, which set forth a National Infrastructure Protection Plan. *See* 6 U.S.C. § 121(d)(8). The Homeland Security Act provides for the dissemination of "information . . . to other agencies of the Federal Government with responsibilities relating to homeland security, and to agencies of State and local governments and private sector entities with such responsibilities in

order to assist in the deterrence, prevention, preemption of, or response to, terrorist attacks against the United States." Powers argues that in the backdrop of these directives, his decision to contract with ITRR was reasonable. The facts in the complaint, however, allege that he sent the information compiled by ITRR to third party individuals and entities. In the light most favorable to the plaintiff, the dissemination to third parties, who may not be involved in law enforcement, was not reasonable under Third Circuit precedent. As such, defendant Powers is not entitled to qualified immunity at this time.

Even if Powers was entitled to qualified immunity, plaintiff may still be entitled to declaratory or injunctive relief, because qualified immunity applies only to damages. *Burns v. Pa Dep't. of Corr.*, 642 F.3d 163, 179 (3d Cir. 2010). Plaintiff's case will not be dismissed on the grounds of qualified immunity.

*J. State Actors*

ITRR defendants argue that they are not state actors and therefore plaintiff cannot bring a claim against them under 42 U.S.C. § 1983. Plaintiff's complaint asserts that they are state actors because "of an exclusive contract between the Commonwealth of Pennsylvania . . . and [ITRR] to carry out an exclusive and important function of the Commonwealth. [ITRR] acted as the agent of the Commonwealth of Pennsylvania in the domestic surveillance conducted against Plaintiff and the drafting and distribution of reports . . ." (Doc. 1, ¶ 40.)

In a § 1983 action, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged

15

deprivation was committed by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citations omitted). Plaintiff bears the burden of proving that defendants were acting "under color of state law." *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). To do this, plaintiff must meet one of three tests:

> the "public function" test, which inquires into whether a private actor is engaging in activities that are the exclusive prerogative of the state; the "close nexus" test, which determines whether the state can be deemed responsible for the specific conduct of which the plaintiff complains; and the "symbiotic relationship" approach, which examines the relationship between the parties to determine whether the state has "insinuated itself into a position of interdependence with [the acting party]" sufficiently to be a joint participant in the challenged activity.

*Mark v. Borough of Hatboro*, 856 F. Supp. 966, 970 (E.D. Pa. 1994) (citations omitted). Plaintiff argues that ITRR defendants are state actors under the public function and symbiotic relationship tests.

### 1. Public Function Test

To meet the public function test, a plaintiff must show more than being compensated by the state or the carrying out of a state program. *Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 710 (3d Cir. 1993). *See Rendell-Baker v. Kohn*, 457 U.S. 830, 841, 102 S. Ct. 2764 (1982) ("Acts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."). In order for a contractor's activities to become acts of the government, "the function performed must have been traditionally the *exclusive* prerogative of the State." *Black*, 985 F.2d at 710 (emphasis in original). Examples of activities that are the

exclusive prerogative of the state include providing adequate medical care to inmates and the police power to make arrests. *See West v. Atkins*, 487 U.S. 42 (1988); *Fagan v. City of Vineland*, 22 F.3d 1296, 1322 (3d Cir. 1992).

Here, ITRR entered into a contract with Powers, agreeing to gather information about plaintiff and compile reports. Beyond this contract, there is nothing in the complaint that ties ITRR to Powers or the state government. The gathering of information and compiling of reports is not traditionally the exclusive prerogative of the state. ITRR defendants are not state actors under the public function test.

### 2. Symbiotic Relationship Test

The symbiotic relationship test allows for liability under the Fourteenth Amendment when "The State has so far insinuated itself into a position of interdependence with . . . [the acting party] that it must be recognized as a joint participant in the challenged activity." *Burton v. Wilmington Park Auth.*, 365 U.S. 715, 725, 81 S. Ct. 856 (1961). In determining whether a symbiotic relationship exists, courts should examine the individual facts and circumstances of the case. *Id.* at 725-26. Under this test, "neither extensive financial assistance nor routine state regulation constitute state action." *Mark*, 856 F. Supp. at 970 (citations omitted). The Third Circuit found that Temple University and Pittsburgh University were state actors because they were not merely state contractors; they received financial assistance from the state, the state committed itself to financial assistance in the future, the state required state-sponsored audits and yearly reports from the schools, and one-third of the Trustees from these

schools are appointed by the state. *Krynicky v. University of Pittsburgh*, 742 F.2d 94, 103 (3d Cir. 1984).

Plaintiff argues that the symbiotic relationship test is met, because ITRR willfully participated in an agreement to provide surveillance and reports to Powers. The contract provided ITRR to be paid, but did not provide extensive or recurring financial assistance. The complaint does not allege that there was state regulation of ITRR. ITRR defendants were merely "private contractors performing services for the government." *Rendell-Baker*, 457 U.S. at 843. They do not meet the symbiotic relationship test to be considered state actors.

Failing to meet these tests, defendants ITRR, ITRRF, and Perelman are not state actors. The claims against them must be dismissed.

*IV. Conclusion*

We will grant defendant Power's motion to dismiss plaintiff's request to enjoin defendants from performing surveillance of individuals or groups engaged only in peaceful First Amendment conduct and from reporting such activities. Plaintiff's request for nominal damages in the amount of $125,000 will be dismissed. We will also grant defendant Power's motion to dismiss Counts III and IV of plaintiff's complaint. Leave to amend Count IV would be futile and will be denied. ITRR defendants' motion to be dismissed as parties will be granted. Counts I and II will not be dismissed.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAS DRILLING AWARENESS COALITION, <br>         Plaintiff <br><br> vs. <br><br> JAMES F. POWERS, INSTITUTE OF TERRORISM RESEARCH AND RESPONSE FOUNDATION, INSTITUTE OF TERRORISM RESEARCH AND RESPONSE, A NON-PROFIT CORPORATION, AND MICHAEL PERELMAN <br>         Defendants | : <br> : <br> : <br> : CIVIL NO. 1:10-CV-1997 <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

*O R D E R*

AND NOW, this 12th day of December, 2011, upon consideration of defendant Power's motion to dismiss (doc. 12), defendants ITRR, ITRRF, and Perelman's motion to dismiss (doc. 14), and plaintiff's responses, and pursuant to the accompanying memorandum, it is ordered that:

    1. Defendant Power's motion to dismiss plaintiff's request for an injunction prohibiting future surveillance and reporting only, is granted.

    2. ITRR Defendants' motion to dismiss plaintiff's request for nominal damages is granted.

    3. Defendant Power's motion to dismiss Counts III and IV of plaintiff's complaint is granted.

4. Defendant Power's motion to dismiss Counts I and II of plaintiff's complaint is denied.

5.  ITRR defendants' request to be dismissed as parties is granted.

6.  Defendant Powers shall respond to Counts I and II of plaintiff's complaint within twenty days hereof.

7.  Plaintiff is granted leave to amend count III of its complaint within twenty days hereof, if it desires to do so.

/s/William W. Caldwell<br>
William W. Caldwell<br>
United States District Judge