UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAS DRILLING AWARENESS COALITION, | : : |
| Plaintiff | : : |
| vs. | CIVIL NO. 1:10-CV-1997 : : : |
| JAMES F. POWERS, *et al.*, Defendants | : : : : : |

*M E M O R A N D U M*

*I.      Introduction*

We are considering a motion to dismiss filed by Defendants, Institute of Terrorism Research and Response Foundation, Institute of Terrorism Research and Response, and Michael Perelman (collectively "ITRR defendants"). This matter relates to a contract between James Powers, former Director of the Pennsylvania Emergency Management Agency's Office of Homeland Security, and ITRR, whereby ITRR agreed to undertake surveillance and report potential threats against Pennsylvania's critical infrastructure. ITRR began surveilling plaintiff, Gas Drilling Awareness Coalition ("GDAC"), and reporting its activities through Pennsylvania Intelligence Bulletins ("PIB"). Plaintiff filed the instant action, alleging the bulletins are defamatory and that the ITRR defendants conspired to violate its civil rights.

*II.       Background*

The following facts are set forth in Plaintiff's complaint and are taken as true, as they must be when considering a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). GDAC is an unincorporated organization that advocates regulation of natural gas drilling of Pennsylvania's Marcellus Shale. The group uses a grass-roots campaign to educate the public on the health and environmental impact of unregulated drilling.

Pursuant to its contract, ITRR identified GDAC as a potential threat to Pennsylvania's infrastructure and began surveillance of the organization. ITRR published bulletins (PIBS) that detailed the activities of the group and classified its threat level. The cover sheet of each bulletin explained, "The Pennsylvania Office of Homeland Security produces this informational/intelligence bulletin specifically for all potentially-affected stakeholders - whether public or private sector, federal or Commonwealth - of Pennsylvania-based Critical Infrastructures, Key Resources and Significant Special Events. Consider the information & intelligence contained herein in context with other known information, indicators, threats and warnings." (Doc. 73, ¶ 78).

The first of such bulletins which identified GDAC, dated July 30, 2010, contained a section titled "Update: Natural Gas Drilling Events That May Draw Unruly Crowds." (Id. at ¶ 61). This section listed five meetings "singled out by anti-drilling activists." (Id.) It went on to list six public events "cited by anti-drilling activists as appropriate venues for providing information or protesting." (Id.) Two of these events

2

mentioned GDAC. The first involved an informational meeting held by the group in Dallas, PA. The other event was the "Cabot Community Picnic," referring to an event held by Cabot Oil and Gas. Next to this event was the following information: "Note: The Gas Drilling Awareness Coalition has released a special communication harshly ridiculing and criticizing this event." (Id.) Following the two lists of events, the bulletin contained an analysis section, in which ITRR classified the threat level of these events as "LOW-to-MODERATE."[1] The analysis explaining the threat level noted "The escalating conflict over natural gas drilling in Pennsylvania may define local fault lines and potentially increase area environmentalist activity or eco-terrorism. GDAC communications have cited Northeastern Pennsylvania counties, specifically Wyoming, Lackawanna and Luzerne, as being in real 'need of our help' and as facing a 'drastic situation.'" (Id. at ¶ 74).

In a separate bulletin, PIB No. 123, dated August 11, 2010, ITRR details the potential plans of GDAC to protest at the Cabot Community Picnic. The section, titled "Adversarial Protest Strategizing," explains "As noted in PIB No. 118, Gas Drilling Awareness Coalition has released a special communication harshly ridiculing and criticizing this event. However, the activists themselves are far from agreed as to the

---

[1] ITRR designated threats as "LOW" when "available intelligence and recent events indicate that hostile elements currently have little intent or capability to take action against the target. Although it cannot be ruled out, an attack is unlikely based on currently available intelligence." (Id. at ¶ 57). A "MODERATE" designation was used when "[a]vailable intelligence and recent events indicate that hostile elements currently have the intent and capability to take action against the target. An attack is likely to be a priority and might well be executed." (Id. at ¶ 60)

course of action." (Id. at ¶ 78). It goes on to quote opinions of activists about whether to protest at the event and how to do so.[2]

---

[2] Included in the bulletin was the following information:

One activist said that he or she was "compiling a fact sheet against Cabot . . . to make up hundreds of flyers and stick them under windshield wipers during the event and hand them out if people want the real facts." In addition, the activist "would like to try to get a group of people together that want to ask Cabot questions that put them on the spot and try to get people to understand the truth."

Another activist is against militant measures: "Driving wedges between us is a disservice to all. The enemy here is the corporations, let the victims have their picnic. They will never see us for what we are if we blind them with resent[ment]."

Yet another activist agreed, saying, "While the in your face approach is an excellent way to approach many gatherings, especially when fund-raising and/or recruitment might seem promising, I agree the Cabot Picnic is probably not such a gathering."

Nonetheless, the latter individual adds guidance for collecting information at the event: "My suggestion would to go as observers [sic] . . . mingle with the crowd. Keep our ears open . . . Who knows what information could be gleaned either in preparing the next step in the struggle, future gas company projects we might not have been aware, or you might overhear someone sympathetic to our cause but doesn't know where to turn to. Infiltrate, observe, retreat, and report."

Similarly: "I want the community to see me there. I am a witness to the destruction of all I hold dear and I will witness their carnival - I live here. It is not a fun event for me - I would assume my warrior sisters and brothers, members of the resistance would also be there . . . showing we are NOT a bunch of lunatics would be helpful . . . Stay home if you are going to act like an idiot."

There have been ongoing prolific communications on both sides of the issue, with all agreeing, "Let's not let this opportunity slip away."

PIB No. 126 reports that GDAC's supporters discussed "the implicit dangers of gas tankers traveling the same roads as school buses in Lake Lehman." (Id. at ¶ 81). ITRR found, however, that there are no "indications that parents of schoolchildren in Lake Lehman are planning protest actions over the natural gas trucks using their roads." (Id. at ¶ 82). The final bulletin, PIB No. 127, does not mention GDAC, but it explains that activists in New York and Pennsylvania are sharing information, including "the specific activities of trucks and personnel of natural gas drilling companies." (Id. at ¶ 88). The analysis portion of this PIB explains "As noted in previous PIB, (sic) analysts have not yet seen indications that local residents faced with natural gas drilling activities are prepared to take the next step toward direct action attacks; however, there has been discussion of the advisability of 'civil disobedience' actions to stop the drilling companies." (Id. at ¶ 89). Defendants distributed these bulletins to the natural gas industry and other potentially-affected industries.

Plaintiff filed the instant action on September 27, 2010. On November 18, 2010, ITRR defendants moved to dismiss. Plaintiff improperly filed an amended complaint on January 21, 2011, which was stricken on July 29, 2011. On December 12, 2011, we granted ITRR defendants' motion to dismiss. Plaintiff filed an amended complaint on May 7, 2012. Presently before the court is ITRR's motion to dismiss the amended complaint.

---

(Id. at 78).

*III.*     *Discussion*

    *A. Standard of Review*

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).   While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d. 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation. Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210.   First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11.   Second, we "determine

whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

*B. Defamation Claim*

ITRR moves to dismiss Plaintiff's defamation claim. To maintain a state law defamation claim in Pennsylvania, a plaintiff must demonstrate:

(1) The defamatory character of the communication.
(2) Its publication by the defendant.
(3) Its application to the plaintiff.
(4) The understanding by the recipient of its defamatory meaning.
(5) The understanding by the recipient of it as intended to be applied to the plaintiff.
(6) Special harm resulting to the plaintiff from its publication.
(7) Abuse of a conditionally privileged occasion.

42 Pa.C.S. § 8343(a).

ITRR defendants argue that the PIBs are not capable of defamatory meaning. Any analysis regarding threat levels, they argue, is only opinion, which is not defamatory. A communication is defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." MacElree v. Philadelphia Newspapers, 544 Pa. 117, 127 (Pa. 1996). "The test to be applied in evaluating any statement is 'the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.'" Baker v. Lafayette College, 516 Pa. 291, 296, 532 A.2d 399 (Pa. 1987) (citing Corabi v. Curtis Publishing Company, 441 Pa. 432, 441, 273, A.2d 899 (Pa. 1971). A "critical factor" in making this determination "is the nature of the audience hearing the remarks." Id.

Opinions do not sustain a defamation claim, unless the party allegedly defamed is able to demonstrate "that the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." Id.

Plaintiff argues that its designation as a "LOW-to-MODERATE" threat was an opinion meant to imply the existence of undisclosed defamatory facts. The basis of their argument is that the descriptions of "LOW" and "MODERATE" threats begin with the phrase "*Available intelligence* and recent events indicate." (doc. 73 at ¶¶ 57, 60). ITRR defendants respond that all facts supporting their opinion, i.e. the available intelligence, are set forth fully in the PIBs.

The PIBs detail significant information about the actions and discussions of activist groups, including Plaintiff, followed by a threat level and analysis.[3] The definition section of the PIB mentioning "available intelligence," taken with the detailed information in other sections, does not reasonably imply the existence of undisclosed defamatory facts. See Mathias v. Carpenter, 402 Pa. Super. 358, 364, 587 A.2d 1 (Pa. Super. Ct. 1991) (finding an expression of opinion not actionable where the facts to assess the

---

[3] PIB No. 118 sets forth five events "singled out by anti-drilling activists" and six public events that "have been cited by anti-drilling activists as appropriate venues for providing information or protesting." (Doc. 73, ¶ 61). This PIB also cites to three counties specifically mentioned by Plaintiff as being in "need of our help" and as facing a "drastic situation." (Id. at ¶ 74). PIB No. 123 quotes five members of Plaintiff's organization expressing their opinions about whether to protest at a particular event. (Id. at ¶ 78). PIB No. 126 reports that Plaintiff's supporters discussed the dangers of gas tankers and school buses traveling the same roads. PIB No. 127 explains that activists have been sharing information, including specific activities of trucks and personnel of gas drilling companies.

8

validity of the opinion were provided). Not only does the Plaintiff fail to demonstrate the implication of undisclosed facts, it makes no argument that any such facts are defamatory.

Additionally, Plaintiff fails to consider the audience of the PIB, a critical factor in determining defamatory character. Each PIB explains that "The Pennsylvania Office of Homeland Security produces this informational/intelligence bulletin specifically for all potentially-affected stakeholders - whether public or private sector, federal or Commonwealth - of Pennsylvania-based Critical Infrastructures, Key Resources and Significant Special Events." (doc. 73, ¶ 50). These bulletins were distributed to potentially-affected stakeholders, including the private gas drilling industry. Although Plaintiff argues that the information in the PIBs portrays it as a terrorist organization, the bulletins merely describe *potential* threats to those that may be affected. We find that the PIBs lack the requisite defamatory character to state a claim.

*C.  Conspiracy Claim*

Plaintiff brings a claim against ITRR defendants for conspiracy to violate its civil rights. ITRR defendants argue that Plaintiff fails to state a conspiracy claim pursuant to 42 U.S.C. §§ 1983, 1985(3), or state law.

*1.  42 U.S.C. § 1983*

To prove a conspiracy claim pursuant to § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir.

1993) (abrogated on other grounds by United States Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003)).  For the reasons set forth in our December 12, 2011 Memorandum and Order, the ITRR defendants are not considered state actors for the purposes of § 1983.  Thus, Plaintiff fails to state a claim against these defendants.[4]

       *2.  42 U.S.C. § 1985(3)*

To state a conspiracy claim pursuant to § 1985(3), a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 77 L. Ed. 1049 (1983).  The term "class" in the second element requires "more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." Bray v. Alexandra Women's Health Clinic, 506 U.S. 263, 269, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993).

In the present case, Plaintiff alleges that the ITRR defendants acted in concert with Defendant Powers to "impose a false and derogatory classification on Plaintiff's speech as posing some quantum of a threat to the critical infrastructure of the Commonwealth." (doc. 73, ¶ 138).  Defendants allegedly "singled out Plaintiff's speech

---

[4] Plaintiff did not contest this conclusion in its brief and focused only on a state law conspiracy claim.

(along with certain other groups engaged in unwanted political speech) for inclusion in the PIBs . . ." (Id. at ¶ 142).  The basis of Plaintiff's conspiracy claim is that Defendants targeted it due to its advocacy for the regulation of natural gas drilling in violation of its constitutional rights.  We find that this is insufficient to meet the requirements in § 1985(3).[5]

### 3. State Law Conspiracy

To state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." Phillips v. Selig, 2008 PA Super 244, 959 A.2d 420, 437 (Pa. Super. Ct. 2008).  Importantly, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."  Id.

To the extent Plaintiff's complaint alleges that the ITRR defendants conspired to defame Plaintiff, this claim fails.  For the reasons set forth above, Plaintiff has failed to state a claim for defamation.  Without the underlying tort, Plaintiff's conspiracy claim fails.  See id.

Plaintiff argues that the complaint also states a claim for conspiracy to violate its First Amendment rights.  Plaintiff argues that although the ITRR defendants

---

[5] We note that Plaintiff does not argue that it has met the requirements of this statute.

are not considered state actors under § 1983, they can still be held liable under Pennsylvania law for conspiring with Powers to violate its civil rights. To meet the first element of a state law conspiracy claim, Plaintiff must show that the ITRR defendants and Powers *"*act[ed] with a common purpose to do an unlawful act." Id. The act, violation of Plaintiff's civil rights, is unlawful if committed by Powers but lawful if committed by the ITRR defendants, because they are not state actors. See (doc. 60) (explaining Plaintiff's complaint did not contain sufficient allegations to consider ITRR defendants state actors for the purposes of § 1983). Plaintiff relies on Dennis v. Sparks for its claim that the ITRR defendants can be liable under such circumstances. This case, however, does not support Plaintiff's assertion. 449 U.S. 24, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980). There, the Supreme Court found that private defendants conspiring with a judge to violate the civil rights of an individual may be liable pursuant to § 1983, regardless of the judge's immunity from suit. Id. at 31. In so finding, the Court determined that the private defendants were acting "under color" of state law, and thus could be liable under § 1983. Here, Plaintiff is bringing a state law claim, not a section 1983 conspiracy claim. Also significant is that the conspiracy claim here has been brought against ITRR defendants, who we previously determined not to be liable for the underlying offense.[6] In Dennis, the conspiracy claim at issue was brought against private

---

[6] Also in support of its argument, Plaintiff cites a California Supreme Court case, Wyatt v. Union Mortgage Co., that explains "As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damages on all of them, regardless of whether they actually commit the tort themselves." 24 Cal. 3d 773, 784, 598 P. 2d 45 (Cal. 1979). Wyatt is easily distinguishable from the

actors that would be liable for the underlying tort, not against the judge who was determined to be immune from suit.  Because the facts differ significantly from those in Dennis, we do not find the case supports Plaintiff's argument.  Without any legal authority to show that ITRR defendants are liable under the present allegations, Plaintiff's conspiracy claim must be dismissed.

*IV. Conclusion*

For these reasons, we will grant the ITRR defendants' motion to dismiss. Leave to further amend would be futile and will be denied.  See Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002).

We will issue an appropriate Order.

/s/William W. Caldwell  
William W. Caldwell  
United States District Judge

---

present case.  There, the court interpreted California law, not Pennsylvania law.  More importantly, the present case deals with the conspiratorial liability of parties that would not be liable for having committed the underlying tort themselves.  We find Wyatt inapplicable to the instant action.

13

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAS DRILLING AWARENESS COALITION,  Plaintiff | : : : : |
| vs. | : CIVIL NO. 1:10-CV-1997 : : : |
| JAMES F. POWERS, *et al.*,  Defendants | : : : : : |

*O R D E R*

AND NOW, this 19th day of November, 2012, upon consideration of the ITRR defendants' motion to dismiss (doc. 76), and Plaintiff's response, and pursuant to the accompanying memorandum, it is ordered that said motion is GRANTED. Plaintiff's claims against the ITRR defendants are dismissed without leave to amend.

/s/William W. Caldwell
William W. Caldwell
United States District Judge